BEFORE THE STATE BOARD OF ACCOUNTANCY

STATE OF COLORADO

Complaint Nos. 2007-001313, 2008-001240, 2008-001277, 2008-001278, 2009-00426, and 2009-001245

---

**AGREEMENT AND FINAL AGENCY ORDER**

---

IN THE MATTER OF A DISCIPLINARY ACTION AGAINST THE CERTIFICATE TO PRACTICE AS A CERTIFIED PUBLIC ACCOUNTANT OF DON R. ILEY, CERTIFICATE NO. 16660 AND FIRM REGISTRATION OF ILEY & ASSOCIATES, INC., REGISTRATION NO. 12482,

Respondents.

---

The State Board of Accountancy (the "Board"), Don R. Iley, CPA ("Respondent Iley"), and Iley & Associates, Inc. ("Respondent Firm), hereby enter into this Agreement and Final Agency Order ("Order") and agree as follows:

## JURISDICTION AND CASE HISTORY

1. Respondent Iley was issued a certificate to practice as a certified public accountant ("CPA") in the State of Colorado on April 24, 1996, being issued certificate number 16660. He is actively licensed and was actively licensed at all times relevant to this matter.

2. Respondent Firm registered as a public accounting firm with the Board on September 26, 2001, being issued registration number 12482, which Respondent Firm has held continuously since that date.

3. Respondent Iley is President and Treasurer of Respondent Firm.

4. The Board has jurisdiction over Respondents, Respondent Iley's certificate to practice, Respondent Firm's registration to practice, and the subject matter of this action pursuant to the provisions of the Colorado Accountancy Act, Sections 12-2-101 through 12-2-132, C.R.S.

5. The Board investigated Respondent Iley's activities after receiving multiple complaints regarding his tax preparation and other professional services. The Board also initiated a complaint after reviewing information regarding Respondent Firm's failure to renew

of public accounting as certified public accountants shall register once every three years with the board as a partnership, professional corporation, or limited liability company of certified public accountants and must meet the following requirements...

### §12-2-117(5), C.R.S.

The partnership, corporation, or limited liability company shall do nothing in this state which, if done by a person who holds a certificate as a certified public accountant within this state and employed by it, would violate the provisions of this article. Any violation by the partnership, corporation, or limited liability company of this article shall be grounds for the board to revoke or suspend its registration.

### §12-2-117(8), C.R.S.

Except as provided in this section, partnerships, professional corporations, and limited liability companies shall not practice public accounting as certified public accountants.

### §12-2-123(1), C.R.S.

After notice and hearing as provided in section 12-2-125, the board may deny the issuance of, refuse to renew, revoke, or suspend any certificate of a certified public accountant issued under this article or any prior law of this state or may fine, censure, issue a letter of admonition to, or place on probation the holder of any certificate and impose other conditions or limitations for any of the following causes:

. . . .

(b) Fraud or negligence in the practice of public accounting in Colorado or any other state or in the filing of or failure to file his own income tax returns;

(c) Violation of any provision of this article, or any final rule or regulation promulgated by the board, or of any valid agency order;

(d) Violation of a rule of professional conduct promulgated by the board under the authority granted by this article;

. . . .

(j) Providing public accounting services to the public for a fee without an active certificate of certified public accountant or a valid registration or acting as a member, partner, or shareholder of a partnership or professional corporation registered pursuant to section 12-2-117;

. . . .

3

**§12-2-126(4), C.R.S.**
If it appears to the board, based upon credible evidence presented to the board, that a person has engaged in or is about to engage in any uncertified act or practice, any act or practice constituting a violation of this article, any rule promulgated pursuant to this article, any order issued pursuant to this article, or any act or practice constituting grounds for administrative sanction pursuant to this article, the board may enter into a stipulation with such person.

11. The provisions of the Board's Rules of Professional Conduct, 3 CCR 705-1, relevant to the facts of this matter provide as follows:

**RULE 7.1   DEFINITIONS**

. . . .

**D.   Due Care**
The discharge of responsibilities to clients, employers and the public with diligence and competence which requires a certificate holder to (1) render services carefully and in a timely manner, (2) be thorough, (3) observe applicable technical and ethical standards, and (4) plan and supervise adequately any professional activity for which the certificate holder is responsible.

**RULE 7.5   PROFESSIONAL COMPETENCE AND COMPLIANCE WITH APPLICABLE TECHNICAL STANDARDS**

A certificate holder shall comply with the following:

**A.   General Standards**

. . . .

**2. Due Care** – Exercise due care in the performance of professional services.

. . . .

**4. Sufficient Relevant Data** – Obtain sufficient relevant data to afford a reasonable basis for conclusions or recommendations in relation to any professional services performed.

**RULE 7.6   OTHER PROFESSIONAL STANDARDS (2003)**

In performing tax services, accounting, review and compilation services, personal financial planning, business valuation, litigation support and expert witness services, and other management advisory services, a certificate holder shall conform with Rule 7.5.A and the professional standards applicable to such

### SSTS No. 3   Certain Procedural Aspects of Preparing Returns

**2.** In preparing or signing a return, a member may in good faith rely, without verification, on information furnished by the taxpayer or by third parties. However, a member should not ignore the implications of information furnished and should make reasonable inquiries if the information furnished appears to be incorrect, incomplete, or inconsistent either on its face or on the basis of other facts known to a member. Further, a member should refer to the taxpayer's returns for one or more prior years whenever feasible.

. . . .

**5.** The preparer's declaration on a tax return often states that the information contained therein is true, correct, and complete to the best of the preparer's knowledge and belief based on all information known by the preparer. This type of reference should be understood to include information furnished by the taxpayer or by third parties to a member in connection with the preparation of the return.

**6.** The preparer's declaration does not require a member to examine or verify supporting data. However, a distinction should be made between (*a*) the need either to determine by inquiry that a specifically required condition, such as maintaining books and records or substantiating documentation, has been satisfied or to obtain information when the material furnished appears to be incorrect or incomplete and (*b*) the need for a member to examine underlying information. In fulfilling his or her obligation to exercise due diligence in preparing a return, a member may rely on information furnished by the taxpayer unless it appears to be incorrect, incomplete, or inconsistent. Although a member has certain responsibilities in exercising due diligence in preparing a return, the taxpayer has the ultimate responsibility for the contents of the return. Thus, if the taxpayer presents unsupported data in the form of lists of tax information, such as dividends and interest received, charitable contributions, and medical expenses, such information may be used in the preparation of a tax return without verification unless it appears to be incorrect, incomplete, or inconsistent either on its face or on the basis of other facts known to a member.

. . . .

**9.** A member should make use of a taxpayer's returns for one or more prior years in preparing the current return whenever feasible. Reference to prior returns and discussion of prior-year tax determinations with the taxpayer should provide information to determine the taxpayer's general tax status, avoid the omission or duplication of items, and afford a basis for the treatment

7

g.  In 2006, Client A received notice from the Internal Revenue Service ("IRS") of an examination of the 2003 return due to underreporting of income. The IRS ultimately determined that the previously distributed refund was improper and that Client A had an additional tax balance of over $8,000.00 due, including interest.

h.  As a result of the errors in the preparation of Client A's 2003 return, the IRS assessed a tax preparer penalty to Respondent Iley in the amount of $1,000.00 for understatement of tax due to willful or reckless conduct pursuant to I.R.C. Section 6694(b).

14.  The Board hereby finds that the conduct described above with respect to Client A constitutes negligence in the practice of public accounting, grounds for discipline pursuant to Section 12-2-123(1)(b), C.R.S. and also constitutes violations of the Board's Rules of Professional Conduct 7.5.A.2, 7.5.A.4, and 7.6, grounds for discipline pursuant to Section 12-2-123(1)(d), C.R.S.

**Clients Mr. and Mrs. B (collectively, "Client B")**

15.  With respect to Client B, Respondent Iley specifically admits, and the Board hereby finds:

a.  Respondent Iley prepared and signed joint federal and state tax returns for Client B for tax year 2003.

b.  Client B submitted to Respondent Iley all information necessary to correctly prepare the return, including:

1)  a consolidated Form 1099 from E*Trade Clearing LLC listing all 2003 sales of stock, sales date, sales quantity, sales price, and gross amount received,

2)  E*Trade transaction details listing the date stock was exercised, exercised price, date sold, selling price, tax withholding, and net to taxpayer,

3)  a Confirmation of Exercise form from Mr. B's employer for same day sales listing stock options exercised during 2003, sale price, option price, and total gain,

4)  a memo from Mr. B's employer stating that income from the sale of stock options was not included in the withholding amount on Mr. B's W-2 form,

5)  a memo from Mr. B's employer stating that income from the sale of other stock was not included in the withholding amount on Mr. B's W-2 form, and

6)  a tax organizer questionnaire with the "Yes" box checked for the question "Did you buy or sell any stocks, bonds or other investment property in 2003?".

9

d. Despite taking possession of sufficient funds to pay the taxes due, Respondent Iley failed to properly and promptly remit payment in full to the IRS, Colorado Department of Revenue, and Colorado Department of Labor and Employment on behalf of Client C's companies.

e. As a result of Respondent Iley's failure to timely remit payment of all taxes owed, Client C received numerous notices of deficiencies, was assessed interest and penalties, and had liens placed against his property.

18. The Board hereby finds that the conduct described above with respect to Client C constitutes negligence in the practice of public accounting, grounds for discipline pursuant to Section 12-2-123(1)(b), C.R.S. and also constitutes a violation of the Board's Rule of Professional Conduct 7.5.A.2, grounds for discipline pursuant to Section 12-2-123(1)(d), C.R.S.

### Client D

19. With respect to Client D, Respondent Iley specifically admits, and the Board hereby finds:

a. Respondent Iley prepared and signed individual federal and state income tax returns for Client D for tax years 1998 through 2004.

b. With respect to the return Respondent Iley prepared for Client D for tax year 2000, Respondent Iley failed to exercise due care and to obtain sufficient relevant data and failed to conform with applicable professional standards, including SSTS Nos. 1, 2, and 3 as follows:

(1) On Schedule C, Respondent Iley improperly deducted the mortgage interest for Client D's residence and Client D's non-deductible personal dry cleaning expenditures as business expenses.

(2) Respondent Iley underreported capital gains on the sale of Client D's residence and another property by more than $40,000.00.

c. With respect to the return Respondent Iley prepared for Client D for tax year 2001, Respondent Iley failed to exercise due care and to obtain sufficient relevant data and failed to conform with applicable professional standards, including SSTS Nos. 1, 2, and 3 as follows:

(1) On Schedule C, Respondent Iley improperly deducted the mortgage interest for Client D's residence and Client D's non-deductible personal dry cleaning expenditures as business expenses.

(2) Respondent Iley failed to prepare a Schedule A to account for the deductions to which Client D would have been entitled, including property taxes, state income taxes, and mortgage interest which were in excess of the standard deduction.

11

data and failed to conform with applicable professional standards, including SSTS Nos. 1, 2 and 3 as follows:

>    (1)    Respondent Iley failed to prepare a Schedule A to account for the deductions to which Client D would have been entitled, including property taxes, state income taxes, and mortgage interest which were in excess of the standard deduction.
>
>    (2)    On Schedule C, Respondent Iley failed to include any deduction for mileage incurred in the course of Client D's business.
>
>    (3)    On Schedule C, Respondent Iley failed to include any deduction for rent or lease payments on business property.
>
>    (4)    In light of the ongoing IRS examination, Respondent Iley ignored the implications of information furnished by Client D and failed to make appropriate inquiries with respect to her income. Rather, Respondent Iley prepared and signed the return reporting less than $15,000.00 in business income. Further, in the face of inconsistent and incomplete information, Respondent Iley failed to make reasonable inquiry to assure the accuracy of Client E's return.

20.    The Board hereby finds that the conduct described above with respect to Client D constitutes negligence in the practice of public accounting, grounds for discipline pursuant to Section 12-2-123(1)(b), C.R.S. and also constitutes violations of the Board's Rules of Professional Conduct 7.5.A.2, 7.5.A.4, and 7.6, grounds for discipline pursuant to Section 12-2-123(1)(d), C.R.S.

**Client E**

21.    With respect to Client E, Respondent Iley specifically admits, and the Board hereby finds:

>    a.    Respondent Iley prepared and signed joint federal and state tax returns for Client E for tax year 2005.
>
>    b.    Client E submitted to Respondent Iley a tax organizer noting the existence of a hauling services business and documentation of advertising expenses for that business.
>
>    c.    Respondent Iley failed to exercise due care and to obtain sufficient relevant data in the preparation of Client E's return and failed to conform with applicable professional standards, including SSTS Nos. 2 and 3. Further, in the face of inconsistent and incomplete information, Respondent Iley failed to make reasonable inquiry to assure the accuracy of Client E's return.

13

27.    Within fourteen days of the effective date of this Order, Respondent Iley shall tender to the Board's Program Director his certificate and wallet card for replacement with a probationary wallet card.

### Practice Monitor

28.    Respondent Iley shall submit to monitoring of his tax practice as set forth below.

29.    Within thirty days of the effective date of this Order, Respondent Iley shall nominate, in writing, a proposed practice monitor for the Board's approval. The practice monitor shall:

    a.    be a CPA actively licensed in Colorado;

    b.    be knowledgeable in Respondent Iley's area of practice, with expertise in tax services;

    c.    be eligible to practice before the IRS under Department of the Treasury Circular 230, 31 C.F.R. pt. 10;

    d.    not have been disciplined by the Board;

    e.    not be related to Respondent Iley nor have any financial interest in Respondent Iley's professional practice;

30.    Respondent Iley's written nomination for practice monitor shall set forth how the nominee meets the above criteria. Respondent Iley shall include with the nomination a current *curriculum vitae* for the nominee.

31.    Within thirty days of the effective date of this Order, Respondent Iley shall also submit a letter to the Board, signed by the nominee, affirming that the nominee meets the requirements set forth in Paragraph 29 above and that the nominee has read and understands this Order and agrees to serve as Respondent Iley's practice monitor. The nominee shall also state that he or she can be fair and impartial in the monitoring of Respondent Iley's practice and will keep all information obtained during the course of the practice monitoring confidential. Such letter signed by the nominee shall also disclose the details of any fees to be charged to Respondent Iley for the provision of the practice monitoring services.

32.    Upon approval by the Board of the practice monitor, Respondent Iley agrees as follows:

    a.    At least once every six months (semiannually), on a date selected by the practice monitor, the practice monitor shall visit Respondent Iley's place of business.

    b.    The practice monitor shall review 20 client files for which Respondent Iley personally prepared tax returns within the designated six month review period. The six month review periods will run from December through May of the following year and June

(3) a description of the 20 client tax files reviewed <u>which does not contain any tax return information identifying the client</u>, but rather, identifying the client only as "Client File 1" and so on;

(4) as to each client filed reviewed, the practice monitor's opinion as to whether Respondent offered and performed his tax services in accordance with the generally accepted professional standards for tax services provided by a CPA in Colorado;

(5) whether, in the practice monitor's opinion, Respondent Iley has followed all relevant federal and state laws and regulations applicable to tax services in Colorado;

(6) a description of any deficiencies or errors the practice monitor discovered in Respondent Iley's tax practice for which the practice monitor determined an amended return should be filed, including an explanation of the reasons for such a conclusion.

33. If at any time the practice monitor believes Respondent Iley is not in compliance with this Order, is unable to provide professional services with competence, as defined by the Board's Rule of Professional Conduct 7.1.E., or has otherwise engaged in conduct in violation of the Accountancy Act or the Board's Rules, the practice monitor shall immediately inform the Board.

34. It is Respondent Iley's responsibility to ensure that the practice monitor's semiannual reports are timely and complete. Failure of the practice monitor to perform the duties set forth above may result in notice from the Board requiring the nomination of a new practice monitor. Within 30 days of such notification by the Board, Respondent Iley shall nominate a new practice monitor according to the requirements set forth above. Failure to nominate a new practice monitor within 30 days of such notification shall constitute a violation of this Order.

35. Respondent Iley's obligation to submit to practice monitoring shall continue until the Board has reviewed and approved all required monitoring reports and issues an order terminating the practice monitoring. Upon notice by the Board to Respondent Iley that any report is not approved, Respondent Iley shall submit to additional monitoring visits and be required to submit additional semiannual practice monitoring reports as ordered by the Board.

36. The period of probation is tolled during any time period when Respondent Iley is not in compliance with the terms of this Order. The probation period shall also be tolled during any time period following the approval of a practice monitor by the Board when Respondent Iley's practice is not being monitored by a practice monitor.

37. **Early Termination of Practice Monitoring.** After successful completion of three years of probation and the Board's approval of six practice monitor reports, Respondent Iley may submit a written request to the Board for early termination of practice monitoring.

17

Accounting, Auditing, Administrative Practice, Regulatory Ethics, Behavioral Ethics, Business Management & Organization, Personnel/HR, and Taxes.

42.  Within two years of the effective date of this Order, Respondent Iley shall submit a cover letter referencing the Complaint numbers above, a summary of the hours and courses completed, and certificates of completion for the CPE to the attention of the Program Director, State Board of Accountancy, 1560 Broadway, Suite 1350, Denver, Colorado 80203.

43.  Respondent Iley agrees that during the probation period he will make timely applications for renewal of his certificate and pay all fees due. Respondent Iley agrees that in the event he elects to transfer to inactive status at any time prior to December 31, 2011, he shall nevertheless complete the 80 hours of CPE required for active licensure for the reporting period ending December 31, 2011 in addition to the 80 hours required by Paragraph 41 above. In the event Respondent Iley elects to transfer to inactive status as described above, he shall submit a cover letter referencing the Complaint numbers above, a summary of the hours and courses completed, and certificates of completion for the CPE to the attention of the Program Director, State Board of Accountancy, 1560 Broadway, Suite 1350, Denver, Colorado 80203 no later than January 31, 2012.

44.  **Termination of Probation.** Respondent Iley shall submit a written request to terminate probation after the probation period has elapsed and he has complied with the terms and conditions of probation. The Board will consider Respondent Iley's request for termination of probation during its ordinary course of business and shall issue an order terminating probation upon a finding that Respondent Iley has complied with all terms of probation. Respondent Iley shall submit a written request to the Program Director, State Board of Accountancy, 1560 Broadway, Suite 1350, Denver, Colorado 80203 which includes:

    a.    the Complaint numbers listed above, and

    b.    a statement of whether Respondent Iley has complied with this Order.

### VIOLATIONS AND SANCTION OF RESPONDENT FIRM

45.  Respondent Firm specifically admits, and the Board hereby finds:

    a.  Respondent Firm's registration expired on May 31, 2005. Respondent Firm failed to renew its registration with the Board prior to that date.

    b.    On November 21, 2007, Respondent Firm filed a reinstatement application with the Board.

    c.    Between June 1, 2005 and November 21, 2007, Respondent Firm:

19

## OTHER TERMS

51. Respondents shall bear the expense of complying with this Order.

52. On the date the Board's Program Director executes this Order, it shall become effective.

53. This Order and its terms shall have the same force and effect as an order entered after a formal hearing pursuant to Sections 12-2-125 and 24-4-105, C.R.S, except that it may not be appealed. Any violation of this Order may result in grounds for discipline against Respondents. Further, any violation proven at a hearing pursuant to Section 24-4-105, C.R.S. shall be deemed a violation of a valid agency order in violation of Section 12-2-123(1)(c), C.R.S.

54. Once effective, this Order shall be a public record in the Board's custody and shall be admissible as evidence at any future proceeding before the Board. In the event this Order is not signed by the Board's Program Director, it shall be void.

55. Invalidation of any portion of this Order by judgment or court order shall in no way affect any other provision, which provisions shall remain in full force and effect.

56. During the pendency of any action arising out of this Order, the obligations of the parties shall be deemed to be in full force and effect and shall not be tolled.

57. Colorado law governs this Order.

**ACCEPTED AND AGREED BY:**

FOR THE STATE BOARD OF ACCOUNTANCY

DON R. ILEY, CPA, President
Iley & Associates, Inc.
Respondents

OFELIA DURAN
Program Director for the
   State Board of Accountancy

Date: _____

EXECUTED by the Board this 29th day of January, ~~2009~~ 2010

21