BEFORE THE STATE BOARD OF ACCOUNTANCY

STATE OF COLORADO

Complaint Nos. 2007-001313, 2008-001240, 2008-001277, 2008-001278, 2009-00426, and
2008-001245

---

**AGREEMENT AND FINAL AGENCY ORDER**

---

IN THE MATTER OF A DISCIPLINARY ACTION AGAINST THE CERTIFICATE TO
PRACTICE AS A CERTIFIED PUBLIC ACCOUNTANT OF DON R. ILEY,
CERTIFICATE NO. 16660 AND FIRM REGISTRATION OF ILEY & ASSOCIATES,
INC., REGISTRATION NO. 12482,

Respondents.

---

The State Board of Accountancy (the "Board"), Don R. Iley, CPA ("Respondent
Iley"), and Iley & Associates, Inc. ("Respondent Firm), hereby enter into this Agreement and
Final Agency Order ("Order") and agree as follows:

### JURISDICTION AND CASE HISTORY

1.      Respondent Iley was issued a certificate to practice as a certified public
accountant ("CPA") in the State of Colorado on April 24, 1996, being issued certificate number
16660. He is actively licensed and was actively licensed at all times relevant to this matter.

2.      Respondent Firm registered as a public accounting firm with the Board on
September 26, 2001, being issued registration number 12482, which Respondent Firm has held
continuously since that date.

3.      Respondent Iley is President and Treasurer of Respondent Firm.

4.      The Board has jurisdiction over Respondents, Respondent Iley's certificate to
practice, Respondent Firm's registration to practice, and the subject matter of this action
pursuant to the provisions of the Colorado Accountancy Act, Sections 12-2-101 through 12-2-
132, C.R.S.

5.      The Board investigated Respondent Iley's activities after receiving multiple
complaints regarding his tax preparation and other professional services. The Board also
initiated a complaint after reviewing information regarding Respondent Firm's failure to renew

its registration. The Board notified Respondents of the complaints and they were given the opportunity to provide the Board with written data, views, and arguments concerning the complaints. Respondents responded to the complaints.

6.      At its regularly scheduled meetings on February 25, 2009, April 29, 2009, and May 27, 2009, the Board considered the complaints and Respondents' responses and found reasonable grounds to refer Respondents to hearing for license law violations.

7.      In order to avoid the uncertainty of litigation and to bring this matter to a conclusion, without further time and expense, the Board and Respondents have reached an agreement, which is set forth herein.

8.      It is the intent of the parties and the purpose of this Order to provide for a settlement of all matters arising out of Complaint Nos. 2007-001313, 2008-001240, 2008-001277, 2008-001278, 2009-00426, and 2009-1245 without the necessity of holding a formal hearing. While this Order does not resolve any other cases, complaints, or matters, known or unknown to the parties, as of the effective date of this Order, there are no additional pending Board complaints or investigations regarding Respondents as of the effective date of this Order. This Order constitutes the entire agreement between the parties, and there are no other agreements or promises, written or oral, that modify, interpret, construe or affect this Order.

9.      Respondents understand that:

a.      Respondents have the right to be represented by an attorney of the Respondents' choice and Respondents are represented by counsel in this matter;

b.      Respondents have the right to a formal hearing pursuant to Sections 12-2-125 and 24-4-105, C.R.S.;

c.      By entering into this Order, Respondents are knowingly and voluntarily giving up the right to a hearing, admit the facts contained in this Order, and relieve the Board of its burden of proving such facts;

d.      Respondents are knowingly and voluntarily giving up the right to present a defense by oral and documentary evidence, to cross-examine witnesses who would testify on behalf of the Board, and to have subpoenas issued upon request; and

e.      Respondents are knowingly and voluntarily waiving the right to seek judicial review of this Order.

## LEGAL AUTHORITY

10.      The provisions of the Colorado Revised Statutes relevant to the facts of this matter provide as follows:

**§12-2-117(1), C.R.S.**

Except as provided in section 12-2-121(2), a partnership, professional corporation, or limited liability company engaged in this state in the practice

2

of public accounting as certified public accountants shall register once every three years with the board as a partnership, professional corporation, or limited liability company of certified public accountants and must meet the following requirements...

**§12-2-117(5), C.R.S.**

The partnership, corporation, or limited liability company shall do nothing in this state which, if done by a person who holds a certificate as a certified public accountant within this state and employed by it, would violate the provisions of this article. Any violation by the partnership, corporation, or limited liability company of this article shall be grounds for the board to revoke or suspend its registration.

**§12-2-117(8), C.R.S.**

Except as provided in this section, partnerships, professional corporations, and limited liability companies shall not practice public accounting as certified public accountants.

**§12-2-123(1), C.R.S.**

After notice and hearing as provided in section 12-2-125, the board may deny the issuance of, refuse to renew, revoke, or suspend any certificate of a certified public accountant issued under this article or any prior law of this state or may fine, censure, issue a letter of admonition to, or place on probation the holder of any certificate and impose other conditions or limitations for any of the following causes:

. . . .

(b) Fraud or negligence in the practice of public accounting in Colorado or any other state or in the filing of or failure to file his own income tax returns;

(c) Violation of any provision of this article, or any final rule or regulation promulgated by the board, or of any valid agency order;

(d) Violation of a rule of professional conduct promulgated by the board under the authority granted by this article;

. . . .

(j) Providing public accounting services to the public for a fee without an active certificate of certified public accountant or a valid registration or acting as a member, partner, or shareholder of a partnership or professional corporation registered pursuant to section 12-2-117;

. . . .

3

(r) Failure of a partnership, professional corporation, or limited liability company to register with the board pursuant to section 12-2-117 and to renew such registration once every three years as prescribed by the board.

### § 12-2-123(3), C.R.S.

(a) When a complaint or investigation discloses an instance of misconduct that, in the opinion of the board, does not warrant formal action by the board but that should not be dismissed as being without merit, a letter of admonition may be issued and sent, by certified mail, to the certificate holder.

(b) When a letter of admonition is sent by the board, by certified mail, to a certificate holder, such certificate holder shall be advised that he or she has the right to request in writing, within twenty days after receipt of the letter, that formal disciplinary proceedings be initiated to adjudicate the propriety of the conduct upon which the letter of admonition is based.

(c) If the request for adjudication is timely made, the letter of admonition shall be deemed vacated and the matter shall be processed by means of formal disciplinary proceedings.

### §12-2-123(5), C.R.S.

(a) In addition to any other penalty which may be imposed pursuant to this section, any person violating any provision of this article or any rules or regulations promulgated pursuant to this article may be fined upon a finding of misconduct by the board as follows:

(I) In the first administrative proceeding against a certificant, a fine not in excess of one thousand dollars;

(II) In any subsequent administrative proceeding against a certificant, a fine not less than one thousand dollars nor in excess of two thousand dollars.

(b) All fines collected pursuant to this subsection (5) shall be transferred to the state treasurer, who shall credit such moneys to the general fund.

### §12-2-124(2), C.R.S.

After notice and hearing as provided in section 12-2-125, the board may revoke or suspend the registration of a partnership, professional corporation, or limited liability company for any of the causes enumerated in section 12-2-123 or for the following additional causes...

**§12-2-126(4), C.R.S.**
If it appears to the board, based upon credible evidence presented to the board, that a person has engaged in or is about to engage in any uncertified act or practice, any act or practice constituting a violation of this article, any rule promulgated pursuant to this article, any order issued pursuant to this article, or any act or practice constituting grounds for administrative sanction pursuant to this article, the board may enter into a stipulation with such person.

11.    The provisions of the Board's Rules of Professional Conduct, 3 CCR 705-1, relevant to the facts of this matter provide as follows:

## RULE 7.1    DEFINITIONS
. . . .

**D.    Due Care**
The discharge of responsibilities to clients, employers and the public with diligence and competence which requires a certificate holder to (1) render services carefully and in a timely manner, (2) be thorough, (3) observe applicable technical and ethical standards, and (4) plan and supervise adequately any professional activity for which the certificate holder is responsible.

## RULE 7.5    PROFESSIONAL COMPETENCE AND COMPLIANCE WITH APPLICABLE TECHNICAL STANDARDS
A certificate holder shall comply with the following:
**A.    General Standards**
. . . .

**2. Due Care** – Exercise due care in the performance of professional services.
. . . .

**4.    Sufficient Relevant Data** – Obtain sufficient relevant data to afford a reasonable basis for conclusions or recommendations in relation to any professional services performed.

## RULE 7.6    OTHER PROFESSIONAL STANDARDS (2003)
In performing tax services, accounting, review and compilation services, personal financial planning, business valuation, litigation support and expert witness services, and other management advisory services, a certificate holder shall conform with Rule 7.5.A and the professional standards applicable to such

services as promulgated by the AICPA or other entities having similar generally recognized authority or jurisdiction over the service provided. For purposes of this rule, such professional standards are considered to be defined by Statements on Standards for Management Advisory Services, Statements on Standards for Tax Services, Statements on Standards for Accounting and Review Services, and Statements on Responsibilities in Personal Financial Planning Practice, all of which have been issued by the AICPA, or by similar pronouncements by other entities having jurisdiction or authority over the service provided.

12.    The American Institute of Certified Public Accountants ("AICPA") Statements on Standards for Tax Services (SSTS) relevant to the facts of this matter provide as follows:

**SSTS No. 1    Tax Return Positions**

. . . .

**2.** The following standards apply to a member when providing professional services that involve tax return positions:

**a.** A member should not recommend that a tax return position be taken with respect to any item unless the member has a good-faith belief that the position has a realistic possibility of being sustained administratively or judicially on its merits if challenged.

**b.** A member should not prepare or sign a return that the member is aware takes a position that the member may not recommend under the standard expressed in paragraph 2a.

**c.** Notwithstanding paragraph 2a, a member may recommend a tax return position that the member concludes is not frivolous as long as the member advises the taxpayer to appropriately disclose. Notwithstanding paragraph 2b, the member may prepare or sign a return that reflects a position that the member concludes is not frivolous as long as the position is appropriately disclosed.

**d.** When recommending tax return positions and when preparing or signing a return on which a tax return position is taken, a member should, when relevant, advise the taxpayer regarding potential penalty consequences of such tax return position and the opportunity, if any, to avoid such penalties through disclosure.

**SSTS No. 2    Answers to Questions on Returns**

**2.** A member should make a reasonable effort to obtain from the taxpayer the information necessary to provide appropriate answers to all questions on a tax return before signing as preparer.

6

**SSTS No. 3    Certain Procedural Aspects of Preparing Returns**

**2.** In preparing or signing a return, a member may in good faith rely, without verification, on information furnished by the taxpayer or by third parties. However, a member should not ignore the implications of information furnished and should make reasonable inquiries if the information furnished appears to be incorrect, incomplete, or inconsistent either on its face or on the basis of other facts known to a member. Further, a member should refer to the taxpayer's returns for one or more prior years whenever feasible.

. . . .

**5.** The preparer's declaration on a tax return often states that the information contained therein is true, correct, and complete to the best of the preparer's knowledge and belief based on all information known by the preparer. This type of reference should be understood to include information furnished by the taxpayer or by third parties to a member in connection with the preparation of the return.

**6.** The preparer's declaration does not require a member to examine or verify supporting data. However, a distinction should be made between (*a*) the need either to determine by inquiry that a specifically required condition, such as maintaining books and records or substantiating documentation, has been satisfied or to obtain information when the material furnished appears to be incorrect or incomplete and (*b*) the need for a member to examine underlying information. In fulfilling his or her obligation to exercise due diligence in preparing a return, a member may rely on information furnished by the taxpayer unless it appears to be incorrect, incomplete, or inconsistent. Although a member has certain responsibilities in exercising due diligence in preparing a return, the taxpayer has the ultimate responsibility for the contents of the return. Thus, if the taxpayer presents unsupported data in the form of lists of tax information, such as dividends and interest received, charitable contributions, and medical expenses, such information may be used in the preparation of a tax return without verification unless it appears to be incorrect, incomplete, or inconsistent either on its face or on the basis of other facts known to a member.

. . . .

**9.** A member should make use of a taxpayer's returns for one or more prior years in preparing the current return whenever feasible. Reference to prior returns and discussion of prior-year tax determinations with the taxpayer should provide information to determine the taxpayer's general tax status, avoid the omission or duplication of items, and afford a basis for the treatment

7

of similar or related transactions. As with the examination of information supplied for the current year's return, the extent of comparison of the details of income and deduction between years depends on the particular circumstances.

## VIOLATIONS AND SANCTION OF RESPONDENT ILEY

### Clients Mr. and Mrs. A (collectively, "Client A").

13.    With respect to Client A, Respondent Iley specifically admits, and the Board hereby finds:

a.    Respondent Iley prepared and signed joint federal and state tax returns for Client A for tax year 2003.

b.    Client A submitted to Respondent Iley all information necessary to correctly prepare the return, including:

1)    a Form W-2 for Mrs. A from her insurance agency employer

2)    a blank Form 1099-Misc for Mrs. A from PartyLite Gifts,

3)    a yearend statement of consultant sales activity for Mrs. A from PartyLite Gifts,

4)    monthly reports of prepaid insurance sales commissions received by Mr. A, and

5)    the tax year 2002 Form 1040 return for Client A.

c.    Respondent Iley failed to exercise due care and to obtain sufficient relevant data in the preparation of Client A's return and failed to conform with applicable professional standards, including SSTS Nos. 1, 2, and 3.

d.    The Form 1040 return prepared by Respondent Iley included three Schedule Cs. The first Schedule C was for Mrs. A and listed insurance agent as her profession. The second Schedule C was for Mrs. A and listed PartyLite Gifts as her profession. Neither Schedule C for Mrs. A contained any dollar amount. Respondent Iley failed to make a reasonable inquiry regarding Mrs. A's business activities with PartyLite Gifts, including her gross receipts and expenses.

e.    The third Schedule C prepared by Respondent Iley was for Mr. A and deducted more than $58,000.00 in pre-paid sales commissions as commission expenses. The Schedule C for Mr. A also deducted all miscellaneous business expenses as supplies, which included non-deductible personal expenses for dry cleaning and purchases from a health store.

f.    Respondent Iley incorrectly determined that Client A was entitled to an Earned Income Credit and to federal and state refunds totaling nearly $7,000.00.

8

g.   In 2006, Client A received notice from the Internal Revenue Service ("IRS") of an examination of the 2003 return due to underreporting of income. The IRS ultimately determined that the previously distributed refund was improper and that Client A had an additional tax balance of over $8,000.00 due, including interest.

h.   As a result of the errors in the preparation of Client A's 2003 return, the IRS assessed a tax preparer penalty to Respondent Iley in the amount of $1,000.00 for understatement of tax due to willful or reckless conduct pursuant to I.R.C. Section 6694(b).

14.   The Board hereby finds that the conduct described above with respect to Client A constitutes negligence in the practice of public accounting, grounds for discipline pursuant to Section 12-2-123(1)(b), C.R.S. and also constitutes violations of the Board's Rules of Professional Conduct 7.5.A.2, 7.5.A.4, and 7.6, grounds for discipline pursuant to Section 12-2-123(1)(d), C.R.S.

### Clients Mr. and Mrs. B (collectively, "Client B")

15.   With respect to Client B, Respondent Iley specifically admits, and the Board hereby finds:

a.   Respondent Iley prepared and signed joint federal and state tax returns for Client B for tax year 2003.

b.   Client B submitted to Respondent Iley all information necessary to correctly prepare the return, including:

1)   a consolidated Form 1099 from E*Trade Clearing LLC listing all 2003 sales of stock, sales date, sales quantity, sales price, and gross amount received,

2)   E*Trade transaction details listing the date stock was exercised, exercised price, date sold, selling price, tax withholding, and net to taxpayer,

3)   a Confirmation of Exercise form from Mr. B's employer for same day sales listing stock options exercised during 2003, sale price, option price, and total gain,

4)   a memo from Mr. B's employer stating that income from the sale of stock options was not included in the withholding amount on Mr. B's W-2 form,

5)   a memo from Mr. B's employer stating that income from the sale of other stock was not included in the withholding amount on Mr. B's W-2 form, and

6)   a tax organizer questionnaire with the "Yes" box checked for the question "Did you buy or sell any stocks, bonds or other investment property in 2003?".

c.   Respondent Iley failed to exercise due care in the preparation of Client B's return and failed to conform with applicable professional standards, including SSTS Nos. 1, 2, and 3.

d.   The Form 1040 return prepared by Respondent Iley did not list any amount for capital gain or loss on the return and did not have a Schedule D attached.

e.   Respondent Iley incorrectly determined that Client B was entitled to federal and state refunds totaling more than $13,000.00.  When Client B expressed surprise that a refund was due and questioned whether the return was properly prepared, Respondent Iley assured them on multiple occasions that this was the case.

f.   Gross stock sales by Client B of more than $100,000.00 were reported to the IRS for 2003.  Since Respondent Iley did not attach a Schedule D, Client B was selected for IRS examination.

g.   In 2006, Client B received notice from the IRS of an examination of the 2003 return due to underreporting of income.  The IRS ultimately determined that the previously distributed refund was improper and that Client B had a short-term net capital gain of nearly $55,000.00 that was not previously reported as income and therefore taxes were due.

h.   As a result of the errors in the preparation of Client B's 2003 return, the IRS assessed tax preparer penalties to Respondent Iley in the amount of $1,000.00 for understatement of tax due to willful or reckless conduct pursuant to I.R.C. Section 6694(b) and $250.00 for understatement of tax due to unrealistic positions pursuant to I.R.C. Section 6694(a).

16.    The Board hereby finds that the conduct described above with respect to Client B constitutes negligence in the practice of public accounting, grounds for discipline pursuant to Section 12-2-123(1)(b), C.R.S.  and also constitutes violations of the Board's Rules of Professional Conduct 7.5.A.2 and 7.6, grounds for discipline pursuant to Section 12-2-123(1)(d), C.R.S.

**Client C**

17.    With respect to Client C, Respondent Iley specifically admits, and the Board hereby finds:

a.    Respondent Iley performed accounting, payroll, and tax return preparation services for Client C's two companies from 1999 until 2003.

b.    Respondent Iley failed to exercise due care in the performance of professional services for Client C.

c.   Between 2001 and 2003, Respondent Iley took possession of funds from Client C for the purpose of paying the payroll and quarterly tax liabilities of Client C's companies.

10

    d.  Despite taking possession of sufficient funds to pay the taxes due, Respondent Iley failed to properly and promptly remit payment in full to the IRS, Colorado Department of Revenue, and Colorado Department of Labor and Employment on behalf of Client C's companies.

    e.  As a result of Respondent Iley's failure to timely remit payment of all taxes owed, Client C received numerous notices of deficiencies, was assessed interest and penalties, and had liens placed against his property.

18.    The Board hereby finds that the conduct described above with respect to Client C constitutes negligence in the practice of public accounting, grounds for discipline pursuant to Section 12-2-123(1)(b), C.R.S. and also constitutes a violation of the Board's Rule of Professional Conduct 7.5.A.2, grounds for discipline pursuant to Section 12-2-123(1)(d), C.R.S.

## Client D

19.    With respect to Client D, Respondent Iley specifically admits, and the Board hereby finds:

    a.  Respondent Iley prepared and signed individual federal and state income tax returns for Client D for tax years 1998 through 2004.

    b.  With respect to the return Respondent Iley prepared for Client D for tax year 2000, Respondent Iley failed to exercise due care and to obtain sufficient relevant data and failed to conform with applicable professional standards, including SSTS Nos. 1, 2, and 3 as follows:

        (1)  On Schedule C, Respondent Iley improperly deducted the mortgage interest for Client D's residence and Client D's non-deductible personal dry cleaning expenditures as business expenses.

        (2)  Respondent Iley underreported capital gains on the sale of Client D's residence and another property by more than $40,000.00.

    c.  With respect to the return Respondent Iley prepared for Client D for tax year 2001, Respondent Iley failed to exercise due care and to obtain sufficient relevant data and failed to conform with applicable professional standards, including SSTS Nos. 1, 2, and 3 as follows:

        (1)  On Schedule C, Respondent Iley improperly deducted the mortgage interest for Client D's residence and Client D's non-deductible personal dry cleaning expenditures as business expenses.

        (2)  Respondent Iley failed to prepare a Schedule A to account for the deductions to which Client D would have been entitled, including property taxes, state income taxes, and mortgage interest which were in excess of the standard deduction.

11

      d.     With respect to the tax return Respondent prepared for Client D for tax year 2002, Respondent Iley failed to exercise due care and to obtain sufficient relevant data and failed to conform with applicable professional standards, including SSTS Nos. 1 and 3 as follows:

        (1)     On Schedule C, Respondent Iley improperly deducted personal dry cleaning expenditures as business expenses.

        (2)     On Schedule C and Form 4562, Respondent Iley included the total cost of a vehicle as a depreciation deduction but also utilized the IRS standard mileage rate deduction which already includes vehicle depreciation.

        (3)     Respondent Iley underreported a capital gain on the sale of Client D's residence by nearly $55,000.00.

      e.     In 2002, Client D received notice from the IRS of an examination of her 2001 return due to underreporting of income. Such examination was later expanded to include her 2000, 2002, and 2003 returns prepared by Respondent Iley.

      f.     Client D executed a Form 2848 power of attorney authorizing Respondent Iley to represent her before the IRS in the examination of her returns for tax years 2000 through 2003.

      g.     With respect to the tax return Respondent Iley prepared for Client D for tax year 2003, Respondent Iley failed to exercise due care and to obtain sufficient relevant data and failed to conform with applicable professional standards, including SSTS Nos. 1, 2 and 3 as follows:

        (1)     Respondent Iley failed to prepare a Schedule A to account for the deductions to which Client D would have been entitled, including property taxes, state income taxes, and mortgage interest which were in excess of the standard deduction.

        (2)     On Schedule C and Form 4562, Respondent Iley included a standard mileage deduction utilizing the mileage figures from the previous tax year.

        (3)     In light of the ongoing IRS examination, Respondent Iley ignored the implications of information furnished by Client D and failed to make appropriate inquiries with respect to her income. Rather, Respondent Iley prepared and signed the return reporting less than $10,000.00 in business income. Further, in the face of inconsistent and incomplete information, Respondent Iley failed to make reasonable inquiry to assure the accuracy of Client E's return.

      h.     With respect to the tax return Respondent Iley prepared for Client D for tax year 2004, Respondent Iley failed to exercise due care and to obtain sufficient relevant

12

data and failed to conform with applicable professional standards, including SSTS Nos. 1, 2 and 3 as follows:

(1)    Respondent Iley failed to prepare a Schedule A to account for the deductions to which Client D would have been entitled, including property taxes, state income taxes, and mortgage interest which were in excess of the standard deduction.

(2)    On Schedule C, Respondent Iley failed to include any deduction for mileage incurred in the course of Client D's business.

(3)    On Schedule C, Respondent Iley failed to include any deduction for rent or lease payments on business property.

(4)    In light of the ongoing IRS examination, Respondent Iley ignored the implications of information furnished by Client D and failed to make appropriate inquiries with respect to her income.  Rather, Respondent Iley prepared and signed the return reporting less than $15,000.00 in business income.  Further, in the face of inconsistent and incomplete information, Respondent Iley failed to make reasonable inquiry to assure the accuracy of Client E's return.

20.    The Board hereby finds that the conduct described above with respect to Client D constitutes negligence in the practice of public accounting, grounds for discipline pursuant to Section 12-2-123(1)(b), C.R.S. and also constitutes violations of the Board's Rules of Professional Conduct 7.5.A.2, 7.5.A.4, and 7.6, grounds for discipline pursuant to Section 12-2-123(1)(d), C.R.S.

## Client E

21.    With respect to Client E, Respondent Iley specifically admits, and the Board hereby finds:

a.    Respondent Iley prepared and signed joint federal and state tax returns for Client E for tax year 2005.

b.    Client E submitted to Respondent Iley a tax organizer noting the existence of a hauling services business and documentation of advertising expenses for that business.

c.    Respondent Iley failed to exercise due care and to obtain sufficient relevant data in the preparation of Client E's return and failed to conform with applicable professional standards, including SSTS Nos. 2 and 3.  Further, in the face of inconsistent and incomplete information, Respondent Iley failed to make reasonable inquiry to assure the accuracy of Client E's return.

    d.      The Schedule C prepared by Respondent Iley contained the following errors:

        (1)    no gross receipts reported for Client E's hauling services business, resulting in the underreporting of nearly $40,000.00 in income;

        (2)    nearly $30,000.00 in advertising expenses reported for the same business when the actual advertising expenses were less than $2,000.00; and

        (3)    the dump truck used as a business vehicle and weighing over 6,000 pounds was depreciated rather than expensed in full, resulting in an underreporting of over $30,000.00 in expenses.

22.    The Board hereby finds that the conduct described above with respect to Client D constitutes negligence in the practice of public accounting, grounds for discipline pursuant to Section 12-2-123(1)(b), C.R.S. and also constitutes violations of the Board's Rules of Professional Conduct 7.5.A.2, 7.5.A.4, and 7.6, grounds for discipline pursuant to Section 12-2-123(1)(d), C.R.S.

23.    Based on the admissions and findings in Paragraphs 13 through 22 above, the Board imposes and Respondent Iley accepts the discipline set forth in Paragraphs 24 through 44 below.

## FINE

24.    Respondent Iley shall pay a fine of $10,000.00, as authorized by Sections 12-2-123(5) and 12-2-126(4), C.R.S. Respondent Iley understands and acknowledges that, pursuant to Section 24-34-108, C.R.S., the Executive Director of the Department of Regulatory Agencies shall impose an additional surcharge of ten percent of this fine. Thus Respondent Iley shall pay a total amount of $11,000.00. The total amount shall be due and payable to the State of Colorado at the time Respondent Iley signs this Order.

25.    Respondent Iley agrees that no portion of the $11,000.00 that Respondent Iley has agreed to pay under the terms of this Order is deductible on any Federal or State tax or information return.

## PROBATION

26.    Respondent Iley's certificate shall be placed on probation for a period of five years, commencing on the effective date of this Order and continuing until the Board issues an order terminating the probation period. During the probationary period, Respondent Iley agrees to be bound by the terms set forth in Paragraphs 27 through 44 below.

27.     Within fourteen days of the effective date of this Order, Respondent Iley shall tender to the Board's Program Director his certificate and wallet card for replacement with a probationary wallet card.

### Practice Monitor

28.     Respondent Iley shall submit to monitoring of his tax practice as set forth below.

29.     Within thirty days of the effective date of this Order, Respondent Iley shall nominate, in writing, a proposed practice monitor for the Board's approval.  The practice monitor shall:

       a.     be a CPA actively licensed in Colorado;

       b.     be knowledgeable in Respondent Iley's area of practice, with expertise in tax services;

       c.     be eligible to practice before the IRS under Department of the Treasury Circular 230, 31 C.F.R. pt. 10;

       d.     not have been disciplined by the Board;

       e.     not be related to Respondent Iley nor have any financial interest in Respondent Iley's professional practice;

30.     Respondent Iley's written nomination for practice monitor shall set forth how the nominee meets the above criteria.  Respondent Iley shall include with the nomination a current *curriculum vitae* for the nominee.

31.     Within thirty days of the effective date of this Order, Respondent Iley shall also submit a letter to the Board, signed by the nominee, affirming that the nominee meets the requirements set forth in Paragraph 29 above and that the nominee has read and understands this Order and agrees to serve as Respondent Iley's practice monitor.  The nominee shall also state that he or she can be fair and impartial in the monitoring of Respondent Iley's practice and will keep all information obtained during the course of the practice monitoring confidential.  Such letter signed by the nominee shall also disclose the details of any fees to be charged to Respondent Iley for the provision of the practice monitoring services.

32.     Upon approval by the Board of the practice monitor, Respondent Iley agrees as follows:

       a.     At least once every six months (semiannually), on a date selected by the practice monitor, the practice monitor shall visit Respondent Iley's place of business.

       b.     The practice monitor shall review 20 client files for which Respondent Iley personally prepared tax returns within the designated six month review period.  The six month review periods will run from December through May of the following year and June

through November of the same year for a period of five years unless otherwise ordered by the Board. The practice monitor will make reasonable efforts to ensure that Respondent Iley has no notice of which files will be selected for review.

       c.    The practice monitor shall review all aspects of Respondent Iley's tax practice. The purpose of the practice monitoring is to evaluate, monitor, and improve the quality and accuracy of Respondent Iley's tax services and to determine whether Respondent Iley meets the generally accepted professional standards for tax services provided by a CPA in Colorado, including the Board's Rules of Professional Conduct, the AICPA Statements on Standards for Tax Services, and Department of the Treasury Circular No. 230. Respondent Iley hereby authorizes the practice monitor to visit his place of business and to review his tax practice as deemed appropriate by the practice monitor and the Board.

       d.    In accordance with the purposes of the practice monitoring set forth above, if the practice monitor discovers any deficiencies or errors in the preparation of any tax returns prepared by Respondent Iley and determines that an amended return should be filed, Respondent Iley shall prepare an amended return at no cost to the client. The practice monitor shall review the amended return prior to filing.

       e.    All disclosures of client tax information by Respondent Iley to the practice monitor shall be in accordance with all applicable rules and regulations, including Treasury Regulation Section 301.7216-2(p).

       f.    The practice monitor shall submit for the Board's review and approval a total of ten semiannual reports over the course of the five year probation period unless otherwise ordered by the Board in accordance with this Order. The first report shall be submitted to the Board no later than August 15, 2010 for review of client tax returns prepared during the period running from December 1, 2009 through May 31, 2010. Thereafter, such reports shall be submitted to the Board consistent with the six month review periods as follows:

       (1)    for the December through May periods, not later than the following August 15th, and

       (2)    for the June through November periods, not later than the following February 15th.

       g.    All semiannual reports submitted by the practice monitor shall be sent to the Program Director, State Board of Accountancy, 1560 Broadway, Suite 1350, Denver, Colorado 80203 and shall include:

       (1)    a reference to the Case Numbers listed above;

       (2)    a description of the review conducted, including the date of any visit to Respondent Iley's place of business;

(3)    a description of the 20 client tax files reviewed <u>which does not contain any tax return information identifying the client</u>, but rather, identifying the client only as "Client File 1" and so on;

(4)    as to each client filed reviewed, the practice monitor's opinion as to whether Respondent offered and performed his tax services in accordance with the generally accepted professional standards for tax services provided by a CPA in Colorado;

(5)    whether, in the practice monitor's opinion, Respondent Iley has followed all relevant federal and state laws and regulations applicable to tax services in Colorado;

(6)    a description of any deficiencies or errors the practice monitor discovered in Respondent Iley's tax practice for which the practice monitor determined an amended return should be filed, including an explanation of the reasons for such a conclusion.

33.    If at any time the practice monitor believes Respondent Iley is not in compliance with this Order, is unable to provide professional services with competence, as defined by the Board's Rule of Professional Conduct 7.1.E., or has otherwise engaged in conduct in violation of the Accountancy Act or the Board's Rules, the practice monitor shall immediately inform the Board.

34.    It is Respondent Iley's responsibility to ensure that the practice monitor's semiannual reports are timely and complete. Failure of the practice monitor to perform the duties set forth above may result in notice from the Board requiring the nomination of a new practice monitor. Within 30 days of such notification by the Board, Respondent Iley shall nominate a new practice monitor according to the requirements set forth above. Failure to nominate a new practice monitor within 30 days of such notification shall constitute a violation of this Order.

35.    Respondent Iley's obligation to submit to practice monitoring shall continue until the Board has reviewed and approved all required monitoring reports and issues an order terminating the practice monitoring. Upon notice by the Board to Respondent Iley that any report is not approved, Respondent Iley shall submit to additional monitoring visits and be required to submit additional semiannual practice monitoring reports as ordered by the Board.

36.    The period of probation is tolled during any time period when Respondent Iley is not in compliance with the terms of this Order. The probation period shall also be tolled during any time period following the approval of a practice monitor by the Board when Respondent Iley's practice is not being monitored by a practice monitor.

37.    **Early Termination of Practice Monitoring.** After successful completion of three years of probation and the Board's approval of six practice monitor reports, Respondent Iley may submit a written request to the Board for early termination of practice monitoring.

17

Such request shall be accompanied by a signed written statement from the practice monitor on the appropriateness of terminating the practice monitoring. Respondent Iley agrees that the decision on the request shall be in the sole discretion of the Board and hereby knowingly and voluntarily waives any right of appeal or review of the Board's decision on any such request.

## Quarterly Reports

38.     Commencing on the effective date of this Order and continuing until the Board issues an order terminating the probation period, Respondent shall submit quarterly reports to the Board.

39.     The first quarter shall begin on the first day of the month immediately following the effective date of this Order. The first quarterly report shall be filed with the Board within 10 days after the passage of three months. Thereafter, the quarterly reports shall be filed with the Board within 10 days after the end of each three-month period.

40.     Respondent Iley shall provide the following information in each quarterly report:

        a.      whether any governmental entity has initiated or filed any civil, criminal, or disciplinary proceeding against Respondent or any such proceeding by any governmental entity has been resolved, dismissed, or resulted in a judgment, and if so, the name of the jurisdiction, the governmental entity, and the case number;

        b.      whether any individual or entity has filed a civil complaint or initiated an arbitration proceeding against Respondent Iley regarding his accounting practice or professional services, and if so, the name of the plaintiff, the jurisdiction, the court or arbitrator, and the case number;

        c.      whether Respondent Iley is in compliance with this Order; and

        d.      Respondent Iley's home address and telephone number, his place of business or employer, the address and telephone number for his place of business or employment, and a brief description of the type of professional services he offers or provides.

## Continuing Professional Education ("CPE")

41.     Within two years of the effective date of this Order, Respondent Iley shall complete 80 hours of CPE in accordance with the standards for CPE set forth in the Board's Rules. These 80 hours shall be required in addition to, and may not be counted toward, the mandatory CPE requirements for an active Colorado certificate. Respondent Iley shall take courses in any of the following subject matter areas, as defined by the National Association of State Boards of Accountancy (NASBA) CPE Fields of Study in effect July 14, 2006:

18

Accounting, Auditing, Administrative Practice, Regulatory Ethics, Behavioral Ethics, Business Management & Organization, Personnel/HR, and Taxes.

42.     Within two years of the effective date of this Order, Respondent Iley shall submit a cover letter referencing the Complaint numbers above, a summary of the hours and courses completed, and certificates of completion for the CPE to the attention of the Program Director, State Board of Accountancy, 1560 Broadway, Suite 1350, Denver, Colorado 80203.

43.     Respondent Iley agrees that during the probation period he will make timely applications for renewal of his certificate and pay all fees due.   Respondent Iley agrees that in the event he elects to transfer to inactive status at any time prior to December 31, 2011, he shall nevertheless complete the 80 hours of CPE required for active licensure for the reporting period ending December 31, 2011 in addition to the 80 hours required by Paragraph 41 above.  In the event Respondent Iley elects to transfer to inactive status as described above, he shall submit a cover letter referencing the Complaint numbers above, a summary of the hours and courses completed, and certificates of completion for the CPE to the attention of the Program Director, State Board of Accountancy, 1560 Broadway, Suite 1350, Denver, Colorado 80203 no later than January 31, 2012.

44.     **Termination of Probation.**  Respondent Iley shall submit a written request to terminate probation after the probation period has elapsed and he has complied with the terms and conditions of probation.  The Board will consider Respondent Iley's request for termination of probation during its ordinary course of business and shall issue an order terminating probation upon a finding that Respondent Iley has complied with all terms of probation.  Respondent Iley shall submit a written request to the Program Director, State Board of Accountancy, 1560 Broadway, Suite 1350, Denver, Colorado 80203 which includes:

      a.     the Complaint numbers listed above, and

      b.     a statement of whether Respondent Iley has complied with this Order.

## VIOLATIONS AND SANCTION OF RESPONDENT FIRM

45.     Respondent Firm specifically admits, and the Board hereby finds:

      a.  Respondent Firm's registration expired on May 31, 2005.  Respondent Firm failed to renew its registration with the Board prior to that date.

      b.     On November 21, 2007, Respondent Firm filed a reinstatement application with the Board.

      c.     Between June 1, 2005 and November 21, 2007, Respondent Firm:

1)    provided public accounting services to the public for a
fee in Colorado without a valid registration; and

2)    held out to the Colorado public as a firm composed of
certified public accountants without an active registration.

d.    The conduct described above of failing to register with the Board every
three years violates Sections 12-2-117(1), 12-2-117(8) and 123(1)(r), C.R.S. and is grounds for
discipline pursuant to Sections 12-2-117(5), 12-2-123(1)(c) and 12-2-124(2), C.R.S.

e.    The conduct described above of providing public accounting services for
a fee without a valid registration violates Sections 12-2-123(1)(j) and 12-2-117(5), C.R.S. and is
grounds for discipline pursuant to Sections 12-2-117(5), 12-2-123(1)(c) and 12-2-124(2), C.R.S.

f.    The conduct described above of holding out violates Section 12-2-120(2),
C.R.S. and is grounds for discipline pursuant to Sections 12-2-117(5), 12-2-123(1)(c) and 12-2-
124(2), C.R.S.

46.    Based on the admissions and findings in Paragraph 45 above, the Board imposes
and Respondent Firm accepts the discipline set forth in Paragraphs 47 through 50 below.

## LETTER OF ADMONITION

47.    This Order shall constitute a Letter of Admonition as set forth in Section 12-2-
123(3), C.R.S.  Respondent Firm is hereby admonished for the acts and omissions described
above and warned that repetition of such conduct could lead to formal disciplinary action
against Respondent Firm's registration, including suspension, or revocation.

48.    By signing this Order, Respondent Firm agrees to waive the right provided by
Section 12-2-123(3), C.R.S. to have formal disciplinary proceedings initiated to adjudicate the
propriety of the conduct upon which this letter of admonition is based.

## FINE

49.    Respondent Firm shall pay a fine of $ 1,000, as authorized by Sections 12-2-
123(5) and 126(4), C.R.S.  Respondent Firm understands and acknowledges that, pursuant to
Section 24-34-108, C.R.S., the Executive Director of the Department of Regulatory Agencies
shall impose an additional surcharge of ten percent of this fine.  Thus Respondent Firm shall
pay a total amount of $1,100.  The total amount shall be due and payable to the State of
Colorado at the time Respondent Firm signs this Order.

50.    Respondent Firm agrees that no portion of the $1,100.00 that Respondent Firm
has agreed to pay under the terms of this Order is deductible on any Federal or State tax or
information return.

## OTHER TERMS

51.    Respondents shall bear the expense of complying with this Order.

52.    On the date the Board's Program Director executes this Order, it shall become effective.

53.    This Order and its terms shall have the same force and effect as an order entered after a formal hearing pursuant to Sections 12-2-125 and 24-4-105, C.R.S, except that it may not be appealed.  Any violation of this Order may result in grounds for discipline against Respondents.  Further, any violation proven at a hearing pursuant to Section 24-4-105, C.R.S. shall be deemed a violation of a valid agency order in violation of Section 12-2-123(1)(c), C.R.S.

54.    Once effective, this Order shall be a public record in the Board's custody and shall be admissible as evidence at any future proceeding before the Board.  In the event this Order is not signed by the Board's Program Director, it shall be void.

55.    Invalidation of any portion of this Order by judgment or court order shall in no way affect any other provision, which provisions shall remain in full force and effect.

56.    During the pendency of any action arising out of this Order, the obligations of the parties shall be deemed to be in full force and effect and shall not be tolled.

57.    Colorado law governs this Order.

**ACCEPTED AND AGREED BY:**

FOR THE STATE BOARD OF
ACCOUNTANCY


DON R. ILEY, CPA, President
Iley & Associates, Inc.
Respondents

OFELIA DURAN
Program Director for the
  State Board of Accountancy

Date: _____

EXECUTED by the Board this _29th_ day

of _January_ , ~~2009.~~ 2010

21

**APPROVED AS TO FORM:**

FARACI WOLANSKE, LLC

JOHN W. SUTHERS
Attorney General

_____

PAUL FARACI, 26032
1512 Larimer, Suite 950
Denver, Colorado 80202
Telephone: 720-904-1190

Attorneys for Respondents

_____

MELANIE J. SNYDER, 35835*
Assistant Attorney General
Business and Licensing Section
1525 Sherman Street, 5th Floor
Denver, Colorado 80203
Telephone: 303-866-5273

Attorneys for State Board of Accountancy
*Counsel of Record

22